[Civ. No. 4047.   Fourth Dist.   Apr. 18, 1950.]

GUARANTEE INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

W. N. Mullen for Petitioner.

T. Groezinger and Robert Ball for Respondents.

BARNARD, P. J.—In this proceeding the petitioner, which is the insurance carrier for Webb Packing Company, seeks to annul an award of the respondent commission based on the death of Ruperto Corona Murrillo.

In the fall of 1947, the Webb Packing Company made an arrangement with one Romero with respect to harvesting an orange crop on its grove near Lindsay. Under this arrangement, Romero was paid 3½ cents per box for supervising the picking crew, for loading the fruit on trucks, and for transporting the workers between their camp at Lindsay and the place of employment. In addition, Romero was paid 4 cents per box for hauling the fruit from the grove to the packing shed. This 4 cents was for hauling alone, and Romero was to pay any costs of loading out of the 3½ cents. Webb was to pay the pickers 15 cents per box.

The work began on November 3, 1947, Murrillo being one of the crew of workers. He worked as a picker parts of each day, until November 7. Romero selected his own loaders, taking men from the picking crew, and paying them 80 cents per hundred boxes for loading. He chose Murrillo for this purpose, at times during the five days, and Murrillo had thus earned $17.42 for loading during that period. It appears without dispute that Romero hired, supervised and paid these loaders and that Webb had no control over the loading operations and did not know what Romero paid the loaders.

On November 7, Murrillo worked both as a picker and as such a loader. After picking had been discontinued for the day and most of the pickers had been sent back to camp in other trucks, Murrillo remained and assisted in loading the truck involved here. After this loading was finished Murrillo got on the truck and Romero drove it along a highway en route to the packing shed, which seems to have been in the same general direction as the labor camp. The only evidence is that Romero intended to stop at the packing shed and, after unloading, to take Murrillo to the camp. While thus en route to the packing shed and thence to the camp Murrillo's hat blew off. He jumped from the moving truck to retrieve his hat, fell under the wheels and was killed.

A claim was filed with the respondent commission, a number of defendants were added, and several hearings were held. In the resulting findings and award it was found that Murrillo's fatal injury arose out of, and in the course of, his employment by the Webb Packing Company and a death

benefit was awarded to his dependents as against this petitioner, the proceeding being dismissed as to the other defendants. A rehearing was denied and this application for a writ of review followed.

The petitioner's main contention is that the finding that Murrillo was employed at the time in question by the Webb Packing Company is unsupported by the evidence. No contention is made that Murrillo was not so employed insofar as his *picking* activities are concerned. It is contended, however, that Romero was an independent contractor in connection with the hauling and loading of oranges; that at the time of his injury Murrillo was en route to the packing shed to unload the boxes he had loaded; that he would not have earned the wage Romero was to pay him until the operation was completed and the boxes were unloaded; that he was then rendering a service solely for Romero as an independent contractor, and Romero was his employer at the time; and that the going and coming rule is not applicable because Murrillo was not then going to camp but was on his way to the packing shed to complete his work for Romero.

It clearly appears that Romero was an independent contractor with respect to the hauling. Assuming that he was an independent contractor with respect to both the loading and the hauling, a question remains as to which employment Murrillo was actually engaged in at the time of the injury,—his employment by Webb Packing Company or his employment by Romero. An important consideration is as to whether his actual work for Romero had terminated or whether the unloading of the boxes at the packing shed was a part of that work and necessary to its completion. While a part of the evidence supports the petitioner's contention that Romero expected Murrillo to assist in the unloading of the truck, there is substantial evidence indicating that Murrillo's actual work for Romero had been completed.

Romero testified that he and Murrillo loaded the truck before they left for the packing house. On being asked why Murrillo was on the truck at the time and whether Murrillo was to help him unload when they got to the packing house Romero replied: "Yes. There was no ways of him going home; that way ——." He was then asked: "He was on the truck so he could go home with you?" and he replied: "Yes." When asked "Were you going to do the loading yourself," he replied: "He was going to help—sometimes they help me, then I take them to the camp." He then testified that he

would choose a man or two from the crew to help with the loading; that he chose Murrillo and he was loading that day; that "He was picking and when the truck came, he would load, and then he would go and pick"; that Murrillo had loaded and unloaded for him about two or three days; that if he used somebody in unloading "I would tell him I will pay you so much"; that Murrillo did not help him unload on the two or three days he had used Murrillo before; that "All the pickers went home, he was loading the truck; I had to give him a ride and take him to the packing house and from there take him to the camp"; that Murrillo was not going to unload; and that "I was going to unload myself." He further testified that "A few more boys were also on the truck at the time of the accident"; that they were going to do nothing; that "they just stayed over there and was going to the camp"; that he paid Murrillo "for loading—yes—he didn't help me unload"; that Murrillo loaded 600 boxes that day; and that he owed Murrillo $4.80 for the work he did for the witness that day.

The evidence, while conflicting, is sufficient to support the conclusion that at the time he was injured Murrillo had completed his work for Romero, at least for that day, and that he was then being taken back to camp by the only means then available. Under some circumstances, the transportation of Murrillo back to camp might not be considered a part of an earlier employment where, as here, he was later on the same day employed by another. This does not necessarily follow, however, under the circumstances here shown. Romero's agreement with Webb Packing Company required him to transport all of the workers from and to the camp, and he was paid for that service. Where a picker was thus temporarily used in loading and then returned to picking, the obligation to transport him back to camp would clearly remain. It hardly seems reasonable that Romero would be relieved of this obligation merely because this temporary change of employment occurred at the close of the picking instead of while it was being continued. The temporary work for Romero having been incidental to the entire project and completed at the grove, the matter of transportation back to camp would naturally and logically remain as a part of the original employment under which Murrillo was brought to the grove. While most of the workers had been taken back in other trucks a few remained and were being taken back to camp in this truck, although they had done no work for Romero. The evi-

dence, with the inferences which may reasonably be drawn therefrom, supports the finding in question, and the conclusion reached by the respondent commission may not be disturbed even though opposite inferences and conclusions are possible. (*California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 461 [132 P.2d 815] ; *Pacific Lbr. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 410 [139 P.2d 892].)

██ The petitioner also contends that the deceased submitted himself to a hazard not reasonably anticipated by his employment since he jumped from the truck although he had been warned to wait until it had stopped. The only evidence in this regard is Romero's testimony that ''his hat blew off and he said 'My hat blew off' but I tell him 'Wait until I stop','' and that ''Then he jumped all of a sudden.'' It does not appear from the meager evidence that the deceased heard this warning and he may have been in the act of jumping when it was given. Aside from any other consideration, the matter presents a question of fact and cannot be here disposed of as a matter of law.

The award is affirmed.

Griffin, J., and Mussell, J., concurred.